# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS CLARK, | ) | CASE NO. 5:24-CV-1312 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| DEBORAH PARKER, *et al.*, | ) | |
| | ) | |
| | ) | **REPORT AND** |
| Defendants. | ) | **RECOMMENDATION** |
| | ) | |

Defendant Deborah Parker ("Ms. Parker") failed to appear at multiple status conferences in this case. After Ms. Parker's most recent failure to appear, I entered an order requiring her to appear on July 29, 2025 and show cause why she should not face sanctions, up to and including dismissal of her counterclaim. Ninety minutes before the show cause hearing was scheduled to take place, Ms. Parker appeared in-person at the Akron federal courthouse and filed a motion for a 60-day continuance. (ECF No. 56.) I denied that motion, but Ms. Parker did not appear for the show cause hearing. Accordingly, and on my own initiative, I recommend that the Court dismiss Ms. Parker's counterclaims without prejudice for failure to prosecute.

I.  **PROCEDURAL HISTORY**

Plaintiff Curtis Clark ("Plaintiff") filed an Amended Complaint against Ms. Parker, his sister, on August 29, 2024. (ECF No. 9.)[1] The Amended Complaint alleges that Ms. Parker fraudulently transferred and conveyed Plaintiff's share in their mother's residence to herself and asserts the following counts: (1) fraudulent conversion; (2) civil conspiracy; (3) unjust enrichment/quantum meruit; (4) slander of title; and (5) declaratory judgment, quiet title, and injunctive relief. (ECF No. 9.)

On September 23, 2024, Ms. Parker filed her Answer to the Amended Complaint and asserted the following counterclaims against Mr. Clark, which are set forth verbatim: (1) Fraud, Slander, Harasment, and Severe Emotional Stress Committed by Curtis Clark; (2) Violation of HUD/Fraud Upon the Court Committed by Curtis Clark; (3) Injunctive Relief[2]; and (4) Injunctive Relief from Illegally Mortgages of Curtis Clark. (ECF No. 16.)

On October 2, 2024, Judge Fleming referred this case to Magistrate Judge Jonathan Greenberg, the prior magistrate judge, for general pretrial supervision and resolution of non-dispositive motions. (ECF No. 23.)

---

[1] Plaintiff's Amended Complaint also asserted the same claims against two other sisters, Sandra Clark and Cathy Jones. On September 4, 2024, the Court construed Plaintiff's Notice of Dismissal (ECF No. 10) of Cathy Jones as a motion to dismiss under Fed. R. Civ. P. 21, granted the motion, and dismissed the Amended Complaint as to her without prejudice. (ECF No. 11.) Plaintiff has not yet obtained service on Sandra Clark.  On July 9, 2025, I issued an order directing Plaintiff that "on or before 8/7/2025 he is to either file valid proof of service upon Ms. Clark, or show cause why this case should not be dismissed against her pursuant to Rule 4(m) of the Federal Rules of Civil Procedure." (Non-document order dated July 9, 2025.) On August 12, 2025, I issued a follow-up order stating that Plaintiff failed to comply with the July 9, 2025 Order and is on notice that failure to comply on or before August 26, 2025 will result in a recommendation that the case against Ms. Clark should be dismissed without further notice.

[2] While Ms. Parker styles this Counterclaim as "Injunctive Relief," she requests "$125,000.00 for second mortgage that the Plaintiff Curtis Clark fraudulent mortgaged the home at 3439 Deuber Avenue S.W., Canton, Ohio … without the consent or signatures of Deborah A. Parker, Saundra Clark-Kamaly, Against Plaintiff, Curtis Clark."

On October 21, 2024, Plaintiff filed a Motion to Dismiss Counterclaim and Oppositions to Defendant Deborah Parker's Motion to Dismiss Complaint and Motion for Restraining Order. (ECF No. 26.)

On October 25, 2024, Judge Greenberg set an in-person status conference for November 12, 2024. (Non-document order dated Oct. 25, 2024.) On November 8, 2024, Ms. Parker filed a motion seeking pro bono counsel and an extension of the November 12, 2024 hearing. (ECF No. 28.) Ms. Parker failed to appear at the November 12, 2024 status conference. (ECF No. 30.)

In his order following the November 12, 2024 status conference, Judge Greenberg noted that Ms. Parker had moved to extend the hearing; however, he stated that "[m]oving for an extension without a court order does not excuse a party's required presence at an in-person status conference." (*Id.*) Significantly, Judge Greenberg noted that "[f]urther non-compliance with the Court's Orders, including failure to appear at Court Ordered events, will result in sanctions. *See Bowles v. City of Cleveland,* 129 F. App'x 239, 240 (6th Cir. 2005)." (*Id*.) Judge Greenberg also denied Ms. Parker's motion for pro bono counsel without prejudice and directed her to re-file her request pursuant to the Pro Bono Civil Case Protocol, including the Affidavit of Need. (*Id*.) On December 10, 2024, Judge Greenberg appointed Marisa T. Darden and Robert J. Kolansky as pro bono counsel. (ECF No. 32.)

Judge Greenberg held a number of status conferences and a case management conference with the parties over the course of the next few months. (*See* ECF Nos. 31, 33, 36, 38.)

3

On April 25, 2025, Ms. Parker's pro bono counsel moved to withdraw. (ECF No. 41.). On April 28, 2025, Ms. Parker filed a motion requesting the removal of her counsel. (ECF No. 42.) Plaintiff's attorney also requested to withdraw as counsel. (ECF No. 43.)

On April 28, 2025, Judge Greenberg set a telephonic status conference for May 8, 2025 and ordered Ms. Parker to attend. (Non-document order dated April 28, 2025.) On May 6, 2025, Ms. Parker filed a motion for an extension of the status conference (ECF No. 44), which Judge Greenberg granted on May 8, 2025, resetting the status conference to May 15, 2025. (Non-document order dated May 8, 2025.)

On May 9, 2025 and May 14, 2025, Ms. Parker moved to extend the upcoming status conference. (ECF Nos. 45-46.) On May 15, 2025 – the date of the status conference – Ms. Parker filed an omnibus motion to continue the status conference for 60 days to provide her time to retain new counsel and to recuse Judge Greenberg and Judge Fleming. (ECF No. 47.) Ms. Parker failed to attend the May 15, 2025 status conference, and Judge Greenberg re-set the telephonic status conference for June 20, 2025. (ECF No. 48.)

After Judge Greenberg recused himself from this case (ECF No. 49), it was reassigned to me on May 20, 2025 for general pretrial supervision and resolution of non-dispositive motions. (Non-document order dated May 20, 2025.)

On May 21, 2025, I re-set the status conference for June 24, 2025 via Zoom. (Non-document order dated May 21, 2025.) On June 24, 2025 – the date of the status conference – Ms. Parker advised Judge Fleming's chambers that she was currently hospitalized for medical treatment and requested a continuance of today's hearing. (Non-document order dated June 24, 2025.) I granted Ms. Parker's motion, re-set the status conference to July 9, 2025 via

4

Zoom, ordered Ms. Parker and Plaintiff to appear at the status conference, and stated that no further continuances of the status conference would be granted.  (*Id.*)

On July 8, 2025, Ms. Parker attempted to file a brief in opposition to Plaintiff's Motion to Dismiss the Counterclaim. (ECF No. 53.) That same day, Judge Fleming issued an order striking the filing because, although there were two motions to withdraw as counsel pending before me, Ms. Parker was currently represented by counsel. (ECF No. 54.)  Judge Fleming ordered that, if I granted Ms. Parker's motion for withdrawal of counsel, she could file a renewed brief in opposition to Plaintiff's Motion to Dismiss the Counterclaim. (*Id.*)

On July 9, 2025, I held a Zoom status conference with the parties. (Non-document order dated July 9, 2025.)  Ms. Parker failed to appear.  Mr. Clark and his lawyer appeared, as did counsel for Ms. Parker.  For good cause shown, I granted the motion by Ms. Parker's counsel to withdraw (ECF No. 41), denied as moot Ms. Parker's motion to withdraw court-appointed attorneys (ECF No. 42), and granted the motion of Plaintiff's counsel to withdraw as counsel (ECF No. 43). (Non-document order dated July 9, 2025.) I also extended the non-expert discovery cut-off and the dispositive motion deadline in this case.  (*Id.*)

On July 10, 2025, I issued an Order to Show Cause regarding Ms. Parker's failure to appear at the July 9, 2025 status conference. (ECF No. 55.) The Order to Show Cause stated that Ms. Parker failed to appear for the July 9, 2025 status conference and provided no excuse or explanation for her failure to do so. (*Id.*) The Order to Show Cause further stated that, as Ms. Parker's prior counsel noted, "the record reflects that prior counsel informed Ms. Parker in writing on June 25, 2025 that the Court was requiring her to attend the status conference on July 9, 2025, and that prior counsel provided her with the Zoom dial-in instructions at that time." (*Id.*) (citing ECF No. 53-1, Exhibit 28.) The Order to Show Cause ordered Ms. Parker

5

to appear in person before me on July 29, 2025 to show cause for her failure to comply with court orders and appear as required for scheduled status conferences. (ECF No. 55.) Finally, the Order to Show Cause contained the following warning: "**Ms. Parker is on notice that failure to appear at the show cause hearing may result in the recommendation of immediate sanctions, including dismissal of Ms. Parker's counterclaims with prejudice, monetary penalties, or any other appropriate sanction.**" (*Id.*) (bold in original).

Ninety minutes before the show cause hearing was scheduled to take place on July 29, 2025 at the Cleveland courthouse, Ms. Parker appeared in-person at the Akron federal courthouse and filed a five-page, single-spaced motion for continuance. (ECF No. 56.) Ms. Parker states in her continuance motion that she attempted to call Judge Fleming's chambers on July 9, 2025 but "lost contact" and thus did not attend the status conference. (*Id.* at PageID # 545.) Ms. Parker makes this assertion despite the fact that her own filings reflect that prior counsel had informed her that the show cause hearing was to be held by me – not Judge Fleming. (*See* ECF No. 53-1, Exhibit 29). Ms. Parker's continuance motion also asked me to grant her an extension of the show cause hearing based on fears for her "life, health, and safety" relating to Mr. Clark (ECF No. 56, PageID # 546), despite the fact that Mr. Clark resides in Los Angeles and has never appeared in person for any court hearings in this case, and the courthouse is a secure facility staffed by multiple courtroom security officers and U.S. Marshals.

I denied Ms. Parker's eleventh-hour motion for a continuance, and she failed to appear for the July 29, 2025 show cause hearing. Mr. Clark attended by Zoom and made arguments regarding why sanctions were appropriate for Ms. Parker's failure to appear at the show cause hearing and prior status conferences. (Non-document order dated July 30, 2025.)

6

Following the show cause hearing, I issued an order advising the parties that I would take Ms. Parker's failure to attend the show cause hearing and prior status conferences under advisement. (Non-document order dated July 30, 2025.) To date, Ms. Parker has offered no explanation or excuse for her failure to attend the show cause hearing.

## II. ANALYSIS

Ms. Parker's counterclaims should be dismissed for failure to prosecute and comply with Court orders. "The Sixth Circuit has held that 'a district court has three different sources of authority to dismiss a case for failure to prosecute.'" *Wingate v. Wal-Mart Stores, Inc.*, No. 1:16-CV-1785, 2017 WL 1251093, at *3 (N.D. Ohio Mar. 14, 2017) (quoting *Rogers v. City of Warren*, 302 F. App'x 371, 375 (6th Cir. 2008)), *report and recommendation adopted*, 2017 WL 1235006 (N.D. Ohio Apr. 4, 2017). Those three sources are: (1) Federal Rule of Civil Procedure 16(f)(1)(A), which authorizes dismissal where party fails to appear at a scheduling or pretrial conference; (2) Rule 41(b), which "permits the court to involuntarily dismiss an action if a plaintiff fails to prosecute [her] case or to comply with a court order"; and (3) the court's inherent authority to "'protect [] the due and orderly administration of justice, and . . . maintain[] the authority and dignity of the court.'" *Id*. (quoting *Bowles v. City of Cleveland*, 129 F. App'x 239, 241 (6th Cir. 2005) (unpub.)).

The Supreme Court has recognized that "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). Notably, it is "well settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013). Moreover, while "[*p*]*ro se* plaintiffs are held to less stringent standards than attorneys

7

. . . cases filed by *pro se* plaintiffs may still be subject to dismissal if the plaintiff fails to meet court orders." *Wingate*, 2017 WL 1251093 at *4.

In determining whether dismissal for failure to prosecute is appropriate, courts in this circuit apply a four-factor test drawn from the Sixth Circuit's decision in *Mulbah v. Detroit Board of Education*, 261 F.3d 586 (6th Cir. 2001):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Id*. at 589; *see also Rogers v. City of Warren*, 302 F. App'x 371, 376 (6th Cir. 2008) (applying *Mulbah* factors). The *Mulbah* factors "balance the competing concerns of 'the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims' with the preference for disposition of cases on their merits." *Wingate*, 2017 WL 1251093 at *4 (quoting *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993)).

### A. **Whether Ms. Parker's failure is due to willfulness, bad faith, or fault**

The first factor considers whether Ms. Parker's failure to attend three status conferences and a show cause hearing are the result of willfulness, bad faith, or fault. This factor is satisfied where a party "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of [her] conduct on those proceedings." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

Ms. Parker failed to attend status conferences on November 12, 2024, May 15, 2025, and July 9, 2025. Ms. Parker also failed to attend the July 29, 2025 show cause hearing despite receiving mailed notice of that hearing and despite explicit warnings that failure to attend could result in sanctions, including the dismissal of her counterclaims. I find that Ms. Parker's

8

"repeated failure to participate in Court proceedings is more than sufficient to display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [her] conduct on those proceedings." *Wingate*, 2017 WL 1251093 at *5 (quotations omitted); *see also Napier v. Bobby*, No. 4:13CV2433, 2015 WL 13730925, at *2 (N.D. Ohio Dec. 31, 2015) (holding that first factor weighed in favor of dismissal where plaintiff failed to attend his own deposition despite being fully aware that deposition was taking place), *report and recommendation adopted*, 2016 WL 1578583 (N.D. Ohio Apr. 20, 2016). The first factor thus weighs in favor of dismissal of Ms. Parker's counterclaims.

### B. Whether Plaintiff was prejudiced by Ms. Parker's conduct

The second factor is whether Ms. Parker's actions prejudiced Plaintiff. This factor also favors dismissal because Plaintiff and his then-counsel incurred time and expense in preparing for and attending multiple court conferences where Ms. Parker failed to appear. *See Wingate*, 2017 WL 1251093 at *5 (holding that defendant was prejudiced where defense counsel expended time, money, and effort to prepare for and attend multiple court proceedings at which plaintiff did not appear).

### C. Whether Ms. Parker was warned that failure to cooperate could lead to dismissal of her counterclaims

The third factor is whether Ms. Parker was warned that failure to appear at court-ordered conferences could lead to dismissal. In setting the July 29, 2025 show cause hearing, I expressly warned Ms. Parker that "**failure to appear . . . may result in the recommendation of immediate sanctions, including dismissal of Ms. Parker's counterclaims with prejudice, monetary penalties, or any other appropriate sanction**." (ECF No. 55) (bold in original). The third factor is thus satisfied as well.

9

### D. **Whether less drastic sanctions were imposed or considered before dismissal was ordered**

The fourth and final factor looks to whether less drastic sanctions were imposed or considered. Courts have recognized that "the sanction of dismissal is appropriate only if the attorney's [or party's] actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process." *Wingate*, 2017 WL 1251093 at *4 (quoting *United States v. $506,069.09 Seized from First Merit Bank*, 664 F. App'x 422, 430 (6th Cir. 2016)).

I have considered lesser sanctions but conclude that no sanction short of dismissal of Ms. Parker's counterclaims would protect the integrity of the pretrial process. Ms. Parker has been warned on multiple occasions that failure to appear at court-mandated conferences could result in dismissal of her counterclaims or sanctions (ECF Nos. 30, 55), but she has not appeared and has made no meaningful effort to explain her absences. Under the circumstances, there is no reason to believe that a lesser sanction would secure Ms. Parker's compliance with court orders. *See Wingate*, 2017 WL 1251093 at *6 (holding that less drastic sanctions than dismissal were "unlikely to elicit a response" where plaintiff "failed, again and again, to appear for Court proceedings when ordered to do so" despite prior warnings that sanctions may be imposed); *Glasgow v. Gen. Elec. Co./GE Renewable Energy*, No. 3:23-CV-1702-JRK, 2024 WL 2924930, at *3 (N.D. Ohio May 20, 2024) (holding that plaintiff's conduct "supports no other conclusion than that he has abandoned his case" where plaintiff failed to appear for successive status conferences and failed to engage with defense counsel), *report and recommendation adopted*, 2024 WL 2899180 (N.D. Ohio June 10, 2024).

After careful consideration, however, I conclude that the dismissal of Ms. Parker's counterclaims should be without prejudice rather than with prejudice. "[D]ismissal with

10

prejudice is the most powerful sanction available" for failure to prosecute. *Napier*, 2015 WL 13730925 at *3. "[C]ourts within this Circuit have noted that a district court should not dismiss with prejudice in cases in which an alternative sanction would better serve the interests of justice." *Wingate*, 2017 WL 1251093 at *6 (recommending dismissal without prejudice rather than with prejudice). Under the circumstances presented here, I determine that a dismissal of Ms. Parker's counterclaims without prejudice, rather than with prejudice, would best serve the interests of justice.

### III.     CONCLUSION

For the foregoing reasons, I recommend that the Court dismiss Ms. Parker's counterclaims (ECF No. 16) without prejudice as a sanction for her failure to prosecute and comply with court orders. If the Court accepts my recommendation that Ms. Parker's counterclaims be dismissed without prejudice, I also recommend that the Court deny as moot Plaintiff's Motion to Dismiss for Failure to State a Claim, Opposition to Defendant's Motion to Dismiss Complaint, and Motion for Restraining Order (ECF No. 26).

Dated: August 14, 2025                                              *s/ Jennifer Dowdell Armstrong*
                                                                                  United States Magistrate Judge

### IV.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being**

> **served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).